# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4893 | **DATE** | 9/28/2001 |
| **CASE TITLE** | | GINGER DORITY vs. CITY OF CHICAGO | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants in part and denies in part the City's motion to strike [107-1] and grants the City's motion for summary judgment [84-1]. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | number of notices |
| | No notices required. | | |
| | Notices mailed by judge's staff. | | SEP 2 8 2001 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| CG | courtroom deputy's initials | FILED FOR DOCKETING 01 SEP 28 PM 12: 22 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

**Document Number**


DOCKETED
SEP 28 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GINGER DORITY,              )
                           )
         Plaintiff,         )
                           )
v.                         )     Judge Ronald A. Guzmán
                           )
CITY OF CHICAGO,            )     98 C 4893
                           )
         Defendant.         )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ginger Dority ("Dority") in her Second Amended Complaint alleges the City of Chicago ("City") violated Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("section 1981"). In a Minute Order of July 20, 1999, Judge Ruben Castillo dismissed Count III, Dority's section 1981 retaliation claim. Therefore, only Dority's Title VII gender and race discrimination and retaliation claims (Counts I and II, respectively) remain. The City has moved for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 and to strike portions of plaintiff's Local Rule 56.1 Submissions. For the reasons provided in this Memorandum Opinion and Order, the motion to strike is granted in part and denied in part, and the summary judgment motion is granted.

## Motion to Strike

The City has moved to strike certain evidence proffered by Dority in opposition to its motion for summary judgment. In particular, the City has moved to strike Exhibits D, R, 2, 6, 10, 14-18,



21-25,[1] 27-28,[2] 30, 31, 39, 41, 42, 46, and 48-50 in their entirety as well as portions of Exhibits E, G, H, I, J, M, Q, and S. The Court will only address those exhibits that the City moves to strike in their entirety and will address the admissibility of portions of exhibits if and when they become relevant to the Court's discussion of the merits of the City's summary judgment motion.

The City moves to strike Exhibits D and R in their entirety as irrelevant. Exhibit D is the deposition testimony of Sandra O'Toole regarding events that occurred when she worked for Andie Theodoratos in the Department of Aviation between 1990 and 1992. Exhibit R is the affidavit of Rena Sterling, who also worked for Theodoratos in the Department of Aviation and described events occurring between 1990 and 1992 involving Theodoratos. "A showing of other instances of discrimination in the company may have evidentiary value, but it is not a substitute for a showing of injury to the plaintiff." *Chambers v. American Trans Air*, 17 F.3d 998, 1003 (7th Cir. 1994). There must be a connection between the other instances of discrimination and the decisions that the plaintiff is challenging. *Id.* In this instance the purported connection or link between the other instances of discrimination and the alleged discrimination against Dority is that Theodoratos was the supervisor of O'Toole, Sterling, and Dority. The Court finds that portions of O'Toole's testimony and Sterling's affidavit have at least some evidentiary value and to that extent, the City's motion to strike Exhibits D and R is denied. However, to the extent that O'Toole and Sterling comment on behavior of employees other than Theodoratos who are not connected with Dority's complaints and

---

[1]For reasons provided below in the Court's discussion of threshold issues, the City's motion to strike plaintiff's exhibits 14-18 and 21-25 is granted.

[2]Defendant has moved to strike exhibits 27 and 28 because they were not included in plaintiff's binder of exhibits served on defendant. Because such exhibits were neither provided to defendant nor to the Court in the judge's copy of the exhibits, defendant's motion to strike exhibits 27 and 28 is granted.

2

to the extent that O'Toole and Sterling's statements are inadmissible based on hearsay or other grounds, the motion to strike is granted. O'Toole's testimony and Sterling's affidavit will be addressed when they become pertinent to the Court's discussion regarding the merit of the summary judgment motion.

Next, the City moves to strike plaintiff's exhibits 2, 30, 31, 41, 50 because Dority has failed to authenticate these exhibits. The Court agrees. "In granting summary judgment, a 'court may consider any material that would be admissible or usable at trial,' including properly authenticated and admissible documents or exhibits." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)) (internal quotations omitted).

Plaintiff's exhibit 2 is purportedly an unknown IDHR investigator's notes regarding an interview of Kevin O'Driscoll. Plaintiff has failed to provide the investigator's affidavit for authentication (or any IDHR employee's affidavit for that matter) and even if she had provided an affidavit, the investigator's notes are hearsay. The proper method would have been for Dority to elicit the underlying facts of the investigation through the deposition testimony or affidavit of O'Driscoll himself. Exhibit 2 is stricken.

Exhibits 30, 31, and 50 appear to be word-processor generated summaries of employee overtime pay in the Department of Transportation.[3] Dority has not made any attempt to establish a foundation for these summaries and includes no affidavit by a "custodian" or "other qualified witness" and has not made a "certification that complies with Rule 901(1)." FED. R. EVID. 802(6).

---

[3]Exhibit 30 is purportedly a summary of employee overtime pay for January and April-November 1997 as well as a summary of total overtime pay for 1997. Exhibit 31 is purportedly a summary of employee overtime pay for February-December 1998 as well as a summary of total overtime pay for 1998. Exhibit 50 is purportedly a summary of employee overtime pay for January-October 1999 as well as a summary of total overtime pay for 1999.

Further, the format of the summaries indicates that the summaries were generated in connection with Dority's instant litigation against the City and there is no foundation laid as to the exhibits' trustworthiness or accuracy. Therefore, the Court grants the City's motion to strike these exhibits.

Exhibit 41 is actually four exhibits that purport to be: (1) an internal memorandum from Kanti Patel to Theodoratos suspending a disciplinary action of Leon Richardson in the Department of Aviation in April 1991, pending an investigation, (2) an incident report in which an unidentified person complains of treatment by Patel and Commissioner Holly, (3) an incident report in which an unidentified person complains of interference by Patel, and (4) a trade union grievance form filed by Theodoratos against Commissioner Holly, Kanti Patel, and Frank Enjick. Dority has not provided any authentication of these documents and has failed to provide a proper foundation to support their admissibility. Exhibit 41 is stricken.

Next, the City moves to strike exhibits 6, 10, 42, and 46 in their entirety based on hearsay grounds. The Court denies the motion to strike these exhibits in their entirety.

Exhibits 6, 10, and 46 are all grievance letters in which either Dority or Frank Taylor, Dority's union steward, allege unfair treatment of Dority by Theodoratos. Exhibit 6 is a memorandum written by Frank Taylor, Dority's union steward, stating that certain city rules were not followed in notifying Dority of an incident that allegedly took place on April 21, 1997. Exhibit 10 is Dority's appeal from being falsely accused of violating City Personnel Rule XVIII paragraph 2 at a April 25, 1997 pre-disciplinary hearing. Exhibit 46 is a Dority's grievance filed on August 9, 1996 regarding several incidents involving Theodoratos. To the extent that these statements are being offered to prove the truth of the matter asserted, the statements are stricken as hearsay. However, to the extent that statements within those exhibits are not offered to prove the truth of the

4

matter asserted, but are offered to prove discriminatory intent or pretext, the motion to strike such statements is denied.

Whether exhibit 42 is admissible warrants separate consideration. Exhibit 42 is the IDHR investigation report regarding the April 21, 1997 incident. "Trial courts have broad discretion when ruling on the admissibility of administrative findings regarding claims of discrimination." *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.*, 867 F. Supp. 686, 692 (N.D. Ill. 1994). "[A]dministrative findings regarding claims of discrimination are generally admissible under Fed. R. Evid. 803(8)(C) (the public records and investigatory file exception to the hearsay rule)." *Tulloss v. Near North Montessori Sch., Inc.*, 776 F.2d 150, 153 (7th Cir. 1985). "However, such evidence may be excluded where the circumstances indicate lack of trustworthiness or where the prejudicial effect of the evidence substantially outweighs its probative value." *Brom*, 867 F. Supp. at 692.

The Court finds that although exhibit 42 is admissible under Fed. R. Evid. 803(8)(C), the prejudicial effect of particular parts of exhibit 42, including the "Notice of Substantial Evidence" cover letter and the investigation report's "Finding and Conclusion" sections (VII.E and VIII.E), outweighs their probative value and are excluded from consideration. The remainder of the report has some probative value, but to avoid prejudice the Court will rely on exhibit 42 for party-opponent admissions and impeachment purposes only. Fed. R. Evid. 403; *see, e.g., Brom*, 867 F. Supp. at 692-93; *Tompulis v. Schwartz & Freeman*, No. 92 C 7375, 1994 WL 419607, at *5 (N.D. Ill. Aug. 9, 1994).

Lastly, the City has moved to strike exhibits 39, 48, and 49 based on relevance. First, the Court denies the motion to strike exhibit 39 (suspension notices of other DOT employees). Dority complains that her three-day suspension in 1997 was caused solely by Kaderbek and Theodoratos'

retaliation for her filing the May 12, 1997 IDHR/EEOC charge. Although a comparison of the conditions under which she was suspended versus the conditions under which others were suspended is irrelevant to proving a *prima facie* case of retaliation, such a comparison is relevant to establishing pretext. Second, the Court strikes exhibit 48, Defendant's Responses to Plaintiff's Second Request for Production of Documents, to the extent that Dority relies on it to allude to some alleged failure of the City to produce certain documents in its possession in violation of a discovery rule and denies the motion to strike to the extent that Dority relies on it for admissions by a party opponent. Third, the Court denies the City's motion to strike exhibit 49, an undated cover letter and form application from Moni Van Puyenbroeck to an unknown claimant who requested an application to recover money. The City argues that exhibit 49 is irrelevant because it is undisputed that the claims related to the overspray incident on August 17, 1997 were not handled by Van Puyenbroeck's office. However, because Dority argues that the handling of the claims by another office is in and of itself evidence of discrimination, the Court finds that the City's argument goes to the weight and not the admissibility of this exhibit.

<u>Facts</u>

The following facts are either undisputed or deemed admitted because the opponent's response failed to comply with Rule 56(e) or LR 56.1, a local rule which this Court strictly enforces. *See Bradley v. Work*, 154 F.3d 704, 708 (7th Cir. 1998) (upholding requirement of rigid compliance with Local Rule); *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 567-68 (7th Cir. 1992) (upholding strict enforcement of precursor to LR 56.1, Local Rule 12); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir. 1992) (listing cases).

The Court notes initially that neither parties' submissions are gleaming examples of compliance with LR 56.1. For example, the City has submitted, in addition to its response to Dority's statement of additional facts, a reply to Dority's responses to the City's statement of facts. Because this submission is not contemplated by LR 56.1, the Court strikes the submission, disregards it and any response relying solely on the statements therein, and instructs the City to refrain from submitting such reply statements in the future. Dority's LR 56.1(b)(3)(A) response to the City's statement of facts contains answers that are neither denials nor admissions of a particular statement of fact, which violates the intent of LR 56.1, and the Court has ignored any statements in her LR 56.1(b)(3)(A) response that are merely statements of additional facts that should be included in her LR 56.1(b)(3)(B) statement. Also in her LR 56.1(b)(3)(A) response, Dority cites multiple paragraphs of Dority's statement of additional facts for support, which also contravenes the spirit of LR 56.1. Further, Dority violates LR 56.1 by failing to provide specific references to the record as to each averment in the case of any disagreement, *see, e.g.,* Pl.'s LR 56.1(b)(3)(A) ¶¶ 44, 49, 68, 76, 80, 81, 95, etc. In requiring strict compliance with LR 56.1, the Court has disregarded any response or any portion of a response in either Dority's or the City's submissions that fails to comply with LR 56.1, lacks a citation or reference to the record, is unsupported by the citation or reference, or fails in any way to comply with LR 56.1.

Plaintiff is employed by the City of Chicago, Department of Transportation, Bureau of Bridges and Transit, as a Foreman of Painters. (Def.'s LR 56.1(a)(3) ¶ 1.) She was originally hired in 1991, as a painter, and was selected for the foreman position on July 1, 1996. (*Id.* ¶¶ 1-2.) From approximately July 1, 1996 to April 1998, plaintiff reported to Andreas Theodoratos, a General

Foreman of Painters. (*Id.* at ¶ 4.) Theodoratos supervised all of the Foreman of Painters in the Bureau of Bridges. (*Id.*)

Stan-Lee Kaderbek has been the Deputy Commissioner/Chief Engineer for the City of Chicago, Department of Transportation, Bureau of Bridges and Transit since approximately September 1, 1995. (*Id.* ¶ 16.) He has ultimate supervision over all of the employees of the Bureau of Bridges and is the only person with the power to issue discipline, which would include written reprimands and suspensions. (*Id.* ¶¶ 17-18.)

Plaintiff began complaining to Kaderbeck about Theodoratos soon after she began working under his supervision, alleging that he was treating her differently than the other foreman.[4] (Pl.'s LR 56.1(b)(3)(B). ¶¶ 64-65.) Theodoratos also made frequent comments to Kaderbek about plaintiff's job performance. (*Id.* ¶ 79.) At one point, Kaderbek told Theodoratos that he was tired of his complaints about Dority's performance because he "didn't see the real justification." (*Id.* ¶ 80.) Kaderbek's experience with plaintiff led him to the opinion that plaintiff "was by and large a good foreman who got the jobs done." (*Id.* ¶ 81.)

While plaintiff does not contend that Theodoratos retaliated against her, she believes that he assigned overtime to her inequitably because of her race and sex.[5] (Def.'s LR 56.1(a)(3) ¶ 7; Pl.'s

---

[4]Kaderbek scheduled meetings to discuss plaintiff's complaints. They always took place in his office, and Eugene Dengler and Art Korzenewski were also present on at least one occasion. (*Id.* ¶ 75.) Frank Taylor, the union steward, was also present at some of the meetings with Kaderbek, Theodoratos, and plaintiff during which unfair treatment was discussed. (*Id.* ¶ 78.)

[5]When Theodoratos was a supervisor in Aviation, he treated the three women he supervised less favorably than the men he supervised. (*Id.* ¶¶ 2,4.) The men he supervised were given more overtime than the women. (*Id.* ¶ 11.) When the women requested overtime, he told them that they "should go home to their husbands and kids" and that "that is where you belong." (*Id.* ¶ 12.)

8

LR 56.1(b)(3)(B) ¶ 128.) She was the only woman and the only black person (at least in 1997) that Theodoratos supervised. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 69, 71.)

Overtime is required to be distributed fairly. The contract requires that overtime first be offered to the person working who is working the job, then by seniority with respect to the lowest number of opportunities. (Kaderbek Dep. at 27.) Once an employee is called for an opportunity, he or she can take it or leave it. However, if he or she leaves it, he or she goes to the bottom of the list and the process starts all over. (Spiros Dep. at. 45-47.) According to Kaderbek, the department tracks the opportunities that are taken and not taken; therefore, employees are charged with refusals against their total number of opportunities. (Pl.'s LR 56.1(b)(3)(B) ¶ 143.)

Theodoratos was responsible for maintaining the overtime list and making overtime assignments. (Def.'s LR 56.1(a)(3) ¶¶ 133, 138.) As such, he almost exclusively made the decisions as to how and to whom to award overtime, but the union steward also involved. (Id. ¶ 139.) Dority complained to Mark Fornaciari, the General Foreman of General Trades, that Theodoratos was failing to offer her overtime opportunities in an equitable manner. (Pl.'s LR 56.1(b)(3)(B) ¶ 128.) According to Fornaciari, he discussed these complaints with Kaderbek, and Kaderbek stated that the contract had to be followed and that they had to be fair. (Id. ¶ 129.) Fornaciari also stated that Kaderbek told Theodoratos that he had to be fair . (Id. ¶¶ 130.) When Kaderbek became aware that plaintiff's levels were lower than the other Foreman, he told Theodoratos that he had to make overtime opportunities available to plaintiff. (Id. ¶ 154.)

When it comes to overtime, plaintiff turns down work that she deems unacceptable. (Def.'s LR 56.1(a)(3) ¶ 79.) She turned down an opportunity to work at the CHA as a painter as

unacceptable on the grounds that painting does not fall under her job title as a supervisor.[6] (*Id.* ¶ 72.) Two male Foremen of Painters, on the other hand, accepted this work[7]. (*Id.* ¶ 71.) Plaintiff further alleges that the overtime work she was offered at the Sign Division was unacceptable as outside of her job description. (*Id.* ¶ 73,75.) She turned down a snow removal overtime opportunity for the same reason. (*Id.* ¶ 77.) Finally, she feels that the overtime opportunities at the water intake cribs are unacceptable because she does not believe that the facilities there are adequate for women.[8] For this reason, she has never gone out there.[9] (*Id.* ¶¶ 65-66.) Painters consider this a significant overtime opportunity.[10] (*Id.* ¶ 63.)

Theodoratos testified in his deposition that plaintiff's overtime hours were low because of her refusals, not because she had not been offered overtime opportunities. (Theodoratos Dep. at 118.) However, the union is currently engaged in arbitration regarding defendant's failure to award overtime equitably. (Pl.'s LR 56.1(b)(3)(B) ¶ 157.)

---

[6]The City and the Labor Union disagree as to whether Foremen of Painters are required to do any painting as part of their jobs. (Dority Aff.at ¶¶ 66-68, Spiros Dep. at 34-39.) Spiros, a union employee, testified in his deposition that it does not violate the contract if a Foreman is offered an opportunity to work as a painter, but is not forced to do it, so long as they are paid as a Foreman. (Spiros Dep. at 39-40.)

[7]This fact is deemed admitted because plaintiff's response was unresponsive.

[8]    Working at the cribs involves being dropped off on a Monday and picked up on a Thursday. (*Id.* ¶ 62.)

[9]There are multiple bedrooms with separate bedrooms that women can use. There are locks on the doors to the sleeping quarters. However, there is only one unisex bathroom facility. But it has a lock on the door. (*Id.* ¶ 66.)

[10]However, refusal of a crib assignment is not charged as a refusal since several employees refuse to go to the crib. (*Id.* ¶ 172.)

The facts surrounding the three-day suspension plaintiff uses to support her claim that Kaderbek retaliated against her are as follows: plaintiff and her crew were working on the Monroe Street Bridge on August 17, 1997. (Def.'s LR 56.1(a)(3) ¶35.) Plaintiff was the only Foreman of Painters working at that time and location responsible for controlling the work that was going on.[11] (*Id.* ¶ 41.) Plaintiff did not have tarps that day, but could have spoken up if she felt she needed them. (*Id.* ¶ 46.) Patrick Green, an employee of the Department of Transportation, received a phone call from Roxanne Tyssen of the Art Institute of Chicago that day complaining that some of the private automobiles at the Institute had been damaged.[12] (*Id.* ¶ 38.) Kaderbek issued plaintiff a three-day suspension soon thereafter, on August 25, 1997, after becoming aware of the complaint and holding a pre-disciplinary meeting. The stated justification for the suspension was "for failing to take the proper steps to control work and for causing overspray and damage to private vehicles and property at the Art Institute of Chicago." (*Id.* ¶¶ 36-38.)[13]

Kirk Woelfle,[14] the man who became the General Foreman of Painters on April 1, 1998 testified in his deposition that overspray happens, but explained how to prevent damage from overspray. (Def.'s LR 56.1(a)(3) ¶¶ 8, 11; Woelfle Dep. at 31-32.)[15] He stated that you have to use

---

[11]Plaintiff was directly responsible for controlling the work at that site. (*Id.* ¶ 46.)

[12]This fact is deemed admitted, as plaintiff's response was unresponsive in that it only addressed the first incident.

[13]Paint crews are required to take precautions to prevent overspray. (*Id.* ¶ 45.) Foremen should use drops or tarps to "encapsulate" an area to the best of their ability when the conditions (using best judgment) call for it. (*Id.* ¶ 45.)

[14]Plaintiff also alleges problems with overtime assignments from Woelfle. (*Id.* ¶ 11.)

[15]For example, by using drops (i.e., covering property such as cars in the area), and by enclosing the area. (*Id.* at 31-32.)

11

your judgment under certain conditions such as when it is windy, and that you might have to decide not to spray. (*Id.* at 31.) Woelfle was told on one occasion in 1997, as a foreman, that he had gotten overspray on a private boat. (*Id.* at 30.) However, when he and Theodoratos went to assess the damage, there was no overspray on it. (*Id.* at 30-31.) A formal complaint was not made, and he was not disciplined. (*Id.*)

Carl August, another Foreman of Painters, admitted that he had had an overspray incident and was not disciplined. (Pl.'s LR 56.1(b)(3)(B) ¶ 245.) However, the damage that resulted was to his own car. (August Dep. at 12-13.) Fornaciari testified that other painters were involved in overspray incidents to City vehicles and they were not disciplined. Rather, they were allowed to bring the vehicles to the yard to be buffed out. However, this was allowed only for oversprayed vehicles belonging to the City. (Fornaciari Dep. at 31.) Plaintiff was not given the option to buff the private vehicles she allegedly oversprayed. (Pl.'s LR 56.1(b)(3)(B) ¶ 248.)

Theodoratos, a white male, was also issued a three-day suspension by Kaderbek on August 25, 1997, arising out of the August 17, 1997 overspray incident. (*Id.* ¶ 47.) As General Foreman, he was responsible for making sure the crew had the proper equipment to ensure that there would be no overspray damage. (*Id.*) Kaderbek found that Theodoratos had failed to take the proper steps to make sure that plaintiff had a tarp readily available to her on the job site. (*Id.*)

Plaintiff filed a charge of discrimination with the IDHR on or about May 12, 1997, and defendant was notified of the charge on or about May 20, 1997. (*Id.* ¶¶ 226-27.) Kaderbek held the pre-disciplinary hearing regarding the August 17 overspray incident on August 25, 1997, two days after the IDHR fact-finding conference. (*Id.* ¶ 235.) Plaintiff bases her allegation that Kaderbek's

decision to suspend her was in retaliation for filing charges on the fact that he issued the suspension two days after the fact-finding hearing at the IDHR. (*Id.* ¶ 20.) Plaintiff subsequently filed two additional charges with the IDHR, dated August 28, 1997 and September 21, 1998 respectively. (Second Am. Compl. ¶¶ 8, 11.)

## Discussion

Pursuant to Rule 56(c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When considering the evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *NFLC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995).

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1). A "plaintiff bringing suit under . . . Title VII can meet his burden of proof for establishing intentional discrimination either through direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83

13

L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof first elaborated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Von Zuckerstein*, 984 F.2d at 1472. The *McDonnell Douglas* burden-shifting analysis requires plaintiff to first offer sufficient evidence to establish a *prima facie* case. 411 U.S. at 802. If plaintiff is able to set out a *prima facie* case, then the burden shifts to the employer to articulate a legitimate nondiscriminatory explanation for the action. *See McDonnell Douglas*, 411 U.S. at 802. If the employer makes a showing of a legitimate justification for its action, plaintiff must then establish that this reason is a mere pretext for discrimination. *See id.* at 804. Although a *prima facie* case for discrimination and retaliation claims is different, "the shifting burdens of production set forth in *McDonnell Douglas* apply to both." *Payne v. Milwaukee County*, 146 F.3d 430, 433 (7th Cir. 1998).

## I. Sex and Race Discrimination Claims

The City has moved for summary judgment as to Dority's sex and race discrimination claims arguing that (1) Dority is barred from basing her discrimination claim on the City's failure to promote her because it is beyond the scope of her charge of discrimination; (2) Dority is barred from basing her discrimination and retaliation claims on incidents regarding the terms and conditions of her employment occurring outside the 300-day window prior to her filing her charge on September 28, 1998 with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission; (3) Dority has not established that she was performing her job satisfactorily; (4) most of the matters of which Dority complains do not constitute adverse employment actions; (5) Dority fails to show that similarly situated employees not in the protected class were treated differently; and (6) Dority fails to show that the legitimate nondiscriminatory justifications proffered by the City are pretextual.

First, the City argues that Dority is barred from raising a discrimination claim based on the City's failure to promote her to general foreman in 1999 because such a claim is beyond the scope of her September 28, 1998 EEOC charge. "[A] Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). However, a claim that is like or reasonably related to the allegations of the charge or grows out of such allegations is considered to be within the scope of the charge." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

In the September 28, 1998 EEOC charge, Dority states that on April 1, 1998, Theodoratos was removed as painter general foreman and replaced by acting general foreman Kirk Woefle and that both of them are white and male. She states that due to her filing a charge of discrimination on May 12, 1997, she had been retaliated and discriminated against. She states that the retaliation has consisted of being (1) repeatedly assigned to jobs with less than the number of painters required; (2) given defective equipment and supplies; (3) assigned to do work without being notified of how long the work was supposed to take; (4) required to submit weekly work reports in much greater detail than was required of other foremen; (5) suspended for three days on August 25, 1997 for allegedly negligently performing her job duties and not being suspended for days she was not scheduled to work; (6) barred from coming to the Grand Avenue headquarters; (7) offered overtime work outside her job classification that entailed working where there were no bathroom/shower facilities for females for an extended period of time; (8) offered overtime work which would have required me to work outside my job classification while there was overtime available within my job classification; and (9) being discriminated against by being assigned overtime hours on an

inequitable basis compared to white, male foremen who are given overtime work within their job descriptions and according to seniority.

Dority's September 28, 1998 charge mentioned that Woefle replaced Theodoratos, but did not state that the replacement itself was the basis for her complaint and the Court finds that such allegation was not fairly implied. It is clear that the basis of the September 28 charge is that Dority felt retaliated and discriminated against because of her filing the May 12, 1997 charge. What is most telling is that Dority was most capable of listing such harassment, retaliation and discrimination in detail and failed to mention in that listing that the City's failure to promote her to general foreman was part of that discrimination.

Further, in investigating Dority's claims which she specifically listed in her 1998 charge, the IDHR/EEOC investigation would not have included issues pertinent to her present claim of discriminatory denial of her promotion to general foreman. "An alleged discriminatory denial of promotion would require an investigation into the positions involved, the applicant pool and the qualifications and race of other employees considered . . . ." *Yarber v. Indiana State Prison*, 713 F. Supp. 271, 276 (N.D. Ill. 1988). The Court finds that her failure to promote claim neither reasonably relates to the allegations of the charge nor grows out of such allegations because the complaints she raises in her September 28, 1998 charge simply would not implicate the promotion or lead to an investigation regarding the promotion. Therefore, Dority's failure to promote claim is outside the scope of her September 28, 1998 charge.[16]

---

[16]Accordingly, the Court strikes as irrelevant those exhibits which are offered to support Dority's failure to promote claim, Pl.'s Exs. 14-18, 21-25; Pl.'s Ex. S, Dority Aff. ¶ 74.

Second, the City argues that Dority is barred from obtaining relief with regard to events that occurred outside the 300-day window prior to her filing the September 28, 1998 IDHR charge. In Illinois, one must file a complaint within 300 days of the occurrence of the event that forms the basis for one's Title VII claim. *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). If defendant moves for summary judgment based on the statute of limitations, plaintiff bears the burden of presenting facts to raise a genuine issue to avoid the statute of limitations. *Avery v. Mapco Gas Prods., Inc.*, 848 F. Supp. 1388, 1393 (N.D. Ind. 1991), *Aff'd*, 18 F.3d 448 (7th Cir 1994). "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Dasgupta v. University of Wis. Bd. Of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997). However, "where it is evident long before the plaintiff sues that she was a[n] apparent victim... 'she cannot reach back and base her suit on conduct occurred outside the statute of limitations.'" *Harsin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) (quoting *Galloway v. General Motors Serv. Parts Oper.*, 78 F.3d 1164, 1166 (7th Cir. 1996)). "[T]he cumulative effect [of repeated conduct outside of the statute of limitations] likely precludes the invocation of the doctrine." *Id.*

The Court finds the continuing violation theory inapplicable in this case. Dority argues that the conduct that occurred outside of the statute of limitations period was so covert that its discriminatory character was not immediately apparent. However, Dority offers no explanation why Theodoratos' alleged extensive and repeated conduct throughout 1996 and 1997 would not have put

a reasonable person in her position on notice of a discrimination and retaliation claim. This is especially true in light of her filing a charge of discrimination in May 1997 alleging that Theodoratos discriminated and retaliated against her. Thus, because Court finds that Dority has failed to present facts raising a genuine issue regarding why the Court should allow her to avoid the statute of limitations as to events occurring prior December 2, 1997, she is barred from basing her discrimination and retaliation claims on events that occurred prior to that time. Dority is barred from seeking relief based on her: (1) being assigned smaller crews between August 21 and September 3, 1996 and between April 7 and 14, 1997; (2) being assigned inefficient crew members in August 1996 and October/November 1997;[17] (3) being reprimanded on June 20, 1997; (4) receiving defective or insufficient supplies and equipment in August 1996, August 1997, September 1997, and Fall 1997; (5) being denied the use of a city vehicle in between October and November 1997;[18] (6) having her crew changed five times by Theodoratos in September 1997; (7) being assigned painters known to be poor workers in November and October 1996 as well as in June and September 1997; (8) being disciplined for damaging rental equipment on July 18, 1997; (9) being barred from entering the Grand Avenue yard in May or September 1997;[19] and (10) undergoing a change in crew between (a) September 11 and October 22, 1996, (b) May 14 and August 17, 1997, (c) August 20 and September

[17] Because Dority has not provided any specific facts that she was assigned inefficient crew members within the statute of limitations period, her complaints regarding inefficient crew members is completely barred.

[18] Dority has not established that she was denied access to a city vehicle within the statute of limitations period and therefore her claim based in such denial is completely barrred.

[19] Again, plaintiff has not established that she was barred from the Grand Avenue Yard within the statute of limitations period and thus she is precluded from basing her claims on being barred from the yard.

18

15, 1997, (d) September 17 and 30, 1997, and (e) October 1, 1997 and December 1, 1997 as well as any other event occurring prior to December 2, 1997.[20]

Because there is no direct evidence of discrimination in this case,[21] the Court proceeds under the *McDonnell Douglas* burden-shifting analysis. To demonstrate a *prima facie* case of employment discrimination based on race and gender, plaintiff must demonstrate that: (1) she belongs to a protected class[22]; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside of her class more favorably. *See Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994).

---

[20]To the extent that Dority argues that the "scope of the charge" doctrine allows her to base her claims on pre-December 2, 1997 events, the Court finds this argument without merit. Her May 12, 1997 EEOC/IDHR charge is specifically limited to her allegation that she was reprimanded on April 28, 1997 based on her race and her sex. (Second Am. Compl., Ex. A.) Her August 28, 1997 EEOC/IDHR charge was limited to her allegation that she was suspended on August 25, 1997 in retaliation for her filing the May 12, 1997 charge. (*Id.*, Ex. C.) Due to Dority's own limitation of the scope of these charges, the Court finds that her claim that she was discriminated against as to the terms and conditions of her employment in a myriad of ways prior to December 2, 1997 is not like or reasonably related to the allegations in either of the 1997 charges. Further, the 1997 charges neither afforded the EEOC an opportunity to settle Dority's dispute with the City with regard to her later alleged complaints about the terms and conditions of her employment nor put the City on notice of charges that she was complaining about such terms and conditions of her employment.

[21]The Court acknowledges the evidence plaintiff has proffered regarding Theodoratos' discriminatory treatment of the women at the Aviation Department. This is not evidence of direct discrimination, as it relates to the discrimination of *other* employees. *See Alexander v. J.C. Penney Co., Inc.*, 165 F.3d 3, 32 (7th Cir. 1998); *Huff v. UARCO, Inc.*, 122 F.3d 374, 384-85 (7th Cir. 1997). However, the Court will examine this evidence under the *McDonnell-Douglas* burden-shifting analysis.
*See* Koulegeorge v. State of Ill. Human Rights Comm'n, 316 Ill. App. 3d 1079, 1081, 738 N.E.2d 172, 181 (1st Dist. 2000).

[22]It is not disputed that Dority is a member of two protected classes based on her gender, female, and her race, African American.

It is undisputed that Dority has established the first element of her *prima facie* case of race and sex discrimination because she is an African American female. However, the City argues that Dority cannot establish the second element of her *prima facie* case, *i.e.*, that she has performed her job satisfactorily. The Court disagrees.

The City argues that Dority cannot establish that she has performed her job satisfactorily because she does not dispute that she left work site without authorization or that she sent the rest of her crew home on April 21, 1997. However, merely because she concedes that she and her crew left the work site on one occasion does not necessarily mean that Dority is unable to establish that she has performed her job satisfactorily. Dority continues to be employed by the City in the same department in which she worked during the complained of events. Moreover, it is undisputed that the current general foreman of painters, Woefle, who replaced Theodoratos in 1998 and continues to hold this position, states that "Dority is qualified for the foreman of painters position" and that "he has observed her work and has never had occasion to criticize her work." (Pl.'s LR 56.1(b)(3)(B) ¶ 50.)    The Court rejects the City's contention that Woefle's opinion regarding Dority's qualifications is irrelevant. The City has not provided any reason in its motion for summary judgment or amended motion to strike as to why the opinion of Woefle, who worked as a foreman with Dority during the complained of events and now currently supervises Dority, is irrelevant as to whether she has performed her job satisfactorily. There is no evidence that the qualifications for the position of foreman of painters have changed since Theodoratos supervised Dority. Therefore, the Court finds that Dority has established that she has performed her job satisfactorily.

The City argues that summary judgment is appropriate as to most of the events of which Dority complains because she has failed to establish that such events constitute adverse employment

actions in order to make out a *prima facie* case of discrimination. Specifically, Dority claims that the following discriminatory actions, which are not barred by the statute of limitations, where taken against her: (1) Kaderbek reprimanded her on April 28, 1997 for leaving the job site without authorization; (2) Theodoratos cut her crew size in two occasions in 1998; (3) Theodoratos changed her crew size between December 2 an 8, 1997; (4) Theodoratos gave her defective supplies in February 1998;(5) Theodoratos required her to file detailed weekly reports; (6) Theodoratos failed to give her written work orders and instead gave confusing, conflicting, and vague orders without time estimates between December 2, 1997 and March 25, 1998; (7) Theodoratos and Woefle offered her less desirable overtime opportunities; (8) Theodoratos and Woefle offered her overtime outside of her job description; (9) Theodoratos and Woefle offered her less overtime opportunities; and (10) Kaderbek suspended her for three days on August 25, 1997.

The City concedes that the three-day suspension and any loss of overtime pay that Dority could prove was attributable to discrimination could constitute adverse employment actions. However, the City argues that remaining events, which we shall for convenience sake call the "terms and conditions" events, alone or in combination, do not constitute adverse employment actions. The Court agrees with the City's argument.

"While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F. 3d 437, 441 (7th Cir. 1996). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse action." *Campbell v. HSA Managed Care Sys., Inc.*, No. 97 C 1622,

1997 WL 610043, at *8 (N.D. Ill. Sept. 25, 1997) (quoting *Blackie v. State of Maine*, 75 F.3d 716 (1st Cir. 1996)). "Indeed, if every minor change in working conditions or trivial action were a materially adverse action then any 'action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* at *8 (quoting *Williams v. Bristol Meyers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

"[A] materially adverse change in the term and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.3d 132, 135 (7th Cir. 1993). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* In fact, the Seventh Circuit recently noted there is no adverse action if the employee "'has not been disciplined, demoted or terminated; has not been denied wage or employee benefit increases or been given less opportunity for such increases; and has not had her job responsibilities reduced or been made to perform menial tasks.'" *Utomi v. Cook County*, No. 98 C 3722, 2001 WL 914465, at *7 (N.D. Ill. Aug 14, 2001). Courts have found adverse employment actions "in an employer's moving an employee's office to an undesirable location, transferring an employee to an isolated corner of the workplace, and requiring an employee to relocate her personnel files while forbidding her to use the firm's stationary and support services." *Collins v. State of Ill.*, 830 F.2d 692, 703 (7th Cir. 1987) (footnotes omitted).

With regard to the terms and conditions events, this case is unlike those cases in which an employer physically isolates the employee, strips her of a job title, or reduces or shifts her

responsibilities. *See Dahm v. Flynn,* 60 F.3d 253, 257 (7th Cir. 1994); *Holland v. Jefferson Nat'l Life Ins. Co.* 883 F.2d 1307, 1314 (7th Cir. 1989); *Collins,* 839 F.2d at 704. Dority's terms and conditions events merely amount to complaints about unfair work assignments, an unfair reprimand, and miscommunications that did not effect Dority's responsibilities or job title. *See Sweeney v. West,* 149 F.3d 550, 556-57 (7th Cir. 1998) (reprimand); *Eisenmann v. Reich,* No. 96 C 6296, 1998 WL 386354 (N.D. Ill. July 17, 1998) (miscommunications, detailed daily reports, equipment problems). Such complaints do not rise to the level of adverse employment actions.

This leaves plaintiff with the three-day suspension and her complaints regarding inequitable overtime opportunities. However, because plaintiff has admitted that she does not believe that the suspension was founded on discrimination, but on retaliation alone (Pl.'s LR 56.1 (b)(3)(A) ¶ 43), the Court will only examine plaintiff's allegations regarding overtime.

Plaintiff alleges that she was offered less overtime opportunities and disproportionately more unattractive opportunities than her colleagues. She argues that many of the opportunities she was offered were unacceptable as outside of the scope of her job description. She attributes this to Theodoratos and Woelfle, her two successive supervisors. The Court acknowledges that a denial of overtime can rise to the level of an adverse employment action with respect to hourly employees, in that it reduces the pay they receive. *Kause v. Alberto Culver Co.,* No. 97 C 3085, 2000 WL 875742, at *6 (N.D. Ill. Jun. 28, 2000). However, "[t]he case-by-case inquiry required to determine whether an action is materially adverse 'must be cast in objective terms.'" *Campbell,* 1997 WL 610043, at *8 (quoting *Blackie v. State of Maine,* 75 F.3d 716, 725 (1st Cir. 1996)).

Plaintiff has failed to provide any evidence to support her allegation that she received a disproportionate number of less desirable overtime opportunities. For the Court to assess this,

plaintiff would have had to provide the Court with evidence as to how many of such opportunities she was offered and how many of such opportunities her colleagues were offered. She did not provide such evidence.

Plaintiff has also failed to prove that being offered overtime work as a painter, outside of her job classification, constitutes an adverse employment action. Mr. Spiros, a union representative, testified that it does not violate the contract if a foreman is offered an opportunity to work as a painter, but is not forced to do so, so long as they are paid as a foreman. Furthermore, the facts before the Court indicate that other foremen are offered, and have accepted, overtime work as painters.

Finally, the Court finds that plaintiff has not provided direct evidence that she suffered an adverse employment action with regard to the number of overtime opportunities she was offered. While she has proffered evidence that her overtime hours were lower than the other foremen, the testimony does not differentiate between overtime worked and overtime opportunities offered. (Pl.'s LR 56.1(b)(3)(B) ¶ 145.) Such evidence clearly cannot support her argument that she was offered less overtime opportunities than her colleagues. Furthermore, the Court takes note of the fact that Dority told her supervisors in September 1997 that she would not be accepting overtime until further notice. For this reason, even if plaintiff was offered less opportunities in the period of time under the Court's consideration, which she has not established, this fact would explain a lower number of opportunities for the end of 1997 and possibly through at least a portion of 1998.

It is important to note that plaintiff has not provided the Court with the date on which she informed her supervisors that she would again begin accepting overtime. Although the Court assumes that such notice was provided before the end of 1998 (given the fact that the 1998 overtime

24

records list overtime hours that year for plaintiff), the exact date (among other things) is necessary for a determination of this question. Clearly, if this notice came before the end of 1997 or early into 1998, the Court would have to take a closer look. If such notice came in the middle or at the end of 1998, however, a lower number of opportunities offered would be easily explainable.

Although plaintiff has not provided direct evidence with regard to this allegation, the Court recognizes that the burden on plaintiff in proving her *prima facie* case is low. *See Smith v. City of Chicago*, No. 98 C 4681, 2001 WL 290414, at *4 (N.D. Ill. Mar. 21, 2001). The Seventh Circuit recently reaffirmed this point when it noted that "plaintiff's evidence on the *prima facie case* need not be overwhelming or even destined to prevail." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000). For this reason, the Court finds the fact that Kaderbeck told Theodoratos overtime must be distributed fairly pursuant to the contract (meaning that this is something plaintiff is entitled to),[23] together with the fact that the union is currently engaged in arbitration regarding inequitable distribution of overtime, is sufficient to establish by inference that plaintiff suffered an adverse employment action.

While the plaintiff has sufficiently established the first three elements of her *prima facie* case, the Court finds that plaintiff has not even made a colorable attempt to establish the final element, that her employer treated similarly situated employees outside of her class more favorably.[24]   It is well established that a plaintiff must provide specific evidence and specific examples of employees

---

[23] It is an adverse action when an employee does not receive something they are entitled to. *See Rabinovitz v. Pena*, 89 F.3d 482 (7th Cir. 1996).

[24] While the Court recognizes that the burden on plaintiff in establishing her *prima facie* case is low, as described *supra*, it is not so low as to be virtually nonexistent. To hold that plaintiff had established this element here would be to hold that the burden on her *is* virtually nonexistent.

who have been treated more favorably in order to establish this element. *See Harris v. SSM Healthcare*, No. 97 C 2121, 1998 WL 704056, at *3 (N.D. Ill. Sept. 13, 1998).

Although plaintiff makes her allegations and unhappiness crystal clear, she has not pointed to any facts that would support a finding that similarly situated employees outside of her class were treated more favorably. Plaintiff simply does not provide the Court with any facts regarding the types of overtime opportunities that her fellow Foremen of Painters were offered. For this reason, the Court is unable to determine if the other foremen were offered unattractive opportunities and opportunities outside of their job description less often than Dority. Neither has plaintiff offered any facts that would indicate the number of opportunities that either she or her fellow Foremen of Painters were offered over any span of time under the consideration of this Court. For this reason, the Court clearly cannot determine whether or not she was offered less overtime opportunities than her colleagues.

The Court further finds that even if plaintiff could establish her *prima facie* case, she has not advanced facts from which a reasonable jury could infer that the nondiscriminatory reasons the City puts forth regarding her overtime opportunities (*i.e.*, that she denied overtime opportunities and went to the bottom of the list and that she informed her supervisors that she would not accept overtime until further notice, etc) are pretextual. With regard to the period of time in which Theodoratos was responsible for assigning overtime, the only evidence that would be probative of pretext is the fact that Theodoratos allegedly discriminated against the women he supervised at the Department of Aviation with regard to overtime. However, this evidence, alone, does not rise to the level of supporting pretext as a matter of law, particularly in light of the fact that the alleged discrimination

took place over five years prior to plaintiff's alleged discrimination.[25] Furthermore, plaintiff has not proffered any evidence with regard to Woelfle that would support pretext. Plaintiff has failed to raise a genuine issue of material fact for trial, and a grant of summary judgement with regard to this claim is appropriate.

## II. Retaliation

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that he (1) "engaged in statutorily protected expression;" (2) "suffered an adverse action by h[is] employer;" and (3) "there is a causal link between h[is] protected expression and the adverse action." *Sweeney v. West*, 149 F.3d 550, 555 (7th Cir. 1998).

The City argues that its summary judgment motion must be granted with regard to this claim because: (1) the Second Amended Complaint does not assert a Title VII retaliation claim; (2) Dority has failed to establish a causal connection between her filing the May 12, 1997 IDHR/EEOC charge and her three-day suspension occurring on August 25, 1997.

---

[25]The Court directs plaintiff to *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 348 (7th Cir. 1997). In *Plair*, the Seventh Circuit found that the affidavits of three other black employees who had allegedly experienced the employer's racial bias were not evidence of discriminatory intent as a matter of law, in part, because they were too remote to tell the Court what the employer did with respect to the plaintiff. The court noted, "[a] contrary rule would wind up putting every supervisor's entire life on trial, which is neither required nor desirable." *Id.*

First, the Court must determine whether the Second Amended Complaint properly states a retaliation claim under Title VII. The City argues that because Judge Castillo dismissed Dority's section 1981 retaliation claim (Count III) and no other count in the Second Amended Complaint addresses retaliation, Dority cannot properly state a retaliation claim under Title VII. (Def.'s Mem. Supp. Mot. Summ. J. at 4 n.4.) Although Dority fails to address this argument in her response brief to defendant's motion for summary judgment, the Court disagrees with the City. The Second Amended Complaint states that "[a]fter Plaintiff filed her charge of discrimination charge [sic], in May, 1997 the Defendant began a course of retaliation against the Plaintiff." (Second Am. Compl. ¶ 28.) Further, the Second Amended Complaint provides details of the alleged retaliation. Moreover, Counts I and II, Dority's Title VII race and gender discrimination claims, incorporate the paragraphs that allege retaliation and provide examples thereof. Therefore, the Court holds that the Second Amended Complaint properly states a Title VII retaliation claim.

Dority alleges that the three-day suspension Kaderbek gave her in August 1997 was in retaliation for the IDHR charges she filed on May 12, 1997 and her continued complaints to him that Theodoratos was treating her unfairly. Because the City does not dispute that plaintiff has established the first two elements of her *prima facie* case, that she engaged in statutorily protected expression and suffered an adverse employment action, the Court need only determine whether plaintiff has established a causal connection between the protected expression and the adverse employment action.

Plaintiff alleges that the temporal sequence between the IDHR fact-finding conference and her suspension raises an inference of illegal motivation, thereby establishing a causal connection. She cites a line of cases that supports the general proposition that a temporal connection may be

sufficient to satisfy this element. However, what the Court is really looking to determine in deciding whether this element is met, is whether the plaintiff would not have been suspended "but for" her statutorily protected expression. *See Klein v. Trustees of Ind. Univ.*, 766 F.2d 275, 280 (7th Cir. 1985). For this reason, temporal sequence, alone, cannot support a causal connection under all circumstances. While the Court must view the evidence in the light most favorable to the plaintiff in deciding this motion, the Court can only draw reasonable inferences.

Given the wide array of other facts surrounding the suspension, the Court does not feel that an inference that plaintiff was suspended in retaliation based upon temporal sequence alone would be a reasonable one. First, and most importantly, while plaintiff was suspended only days after the IDHR conference, the event supporting her suspension *occurred* just days before the conference. Second, Kaderbek knew about the filing of the IDHR charges months before plaintiff was suspended. (Pl.'s LR 56.1(b)(3)(B) ¶¶ 226-27.) Finally, and also quite telling, is the fact that Theodoratos, a white male who had not engaged in statutorily protected expression (and plaintiff's supervisor), was also suspended as a result of the overspray occurring on August 17, 1997.[26]

Even if plaintiff had established a *prima facie* case of retaliation, she still did not raise an inference in the facts before the Court that the City's nondiscriminatory justification for her suspension (failing to take the proper steps to control work and for causing overspray and damage to private vehicles and property at the Art Institute of Chicago) was pretextual. Plaintiff points to other Foremen of Painters who were involved in overspray incidents that were not disciplined to

---

[26]To the extent that plaintiff may be arguing that Kaderbek's decision to suspend her was tainted by Theodoratos' complaints about her, the Court points to the facts that Kaderbek told Theodoratos that he did not see the justification for his complaints and that Kaderbek had formed a positive opinion as to plaintiff's work as a Foreman.

show pretext. However, the facts surrounding each example are so clearly distinguishable that they cannot support an inference that plaintiff's suspension was retaliatory.

For instance, one of the foremen got overspray on his *own* property and did not file a complaint. He was not disciplined. Another foreman allegedly got overspray on a boat. However, when he went to inspect the boat there was no damage, and no formal complaint was ever filed. Finally, while others have had the opportunity to get vehicles that had been damaged by overspray buffed in the yard, the vehicles were always owned by the City and not by private individuals as in the present case.[27]

In determining if an employer's legitimate, nondiscriminatory justification for an adverse employment action is pretextual, the threshold question is whether the employer honestly believed the reasons it offered. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 808 (7th Cir. 1999). Plaintiff has failed to raise an inference that Kaderbek did not honestly believe a suspension was warranted under the circumstances.

First, there was a formal complaint of overspray damage to private property located near the Monroe Bridge, the paint site where plaintiff's crew was working that day.[28] Next, it is undisputed that plaintiff was the only Foreman of Painters working at the Monroe Bridge that day. As such, she was responsible for supervising the work of the painters at that site, which would include employing

---

[27]The Court acknowledges that plaintiff has proffered facts to the effect that other employees have been involved in an overspray without being disciplined (Pl.'s LR 56.1(b)(3)(B) ¶¶ 246-247.) However, plaintiff's citation to the record for ¶ 246 does not support the facts alleged, and the pages plaintiff cites to for ¶ 247 are not contained in plaintiff's exhibit E.

[28]The Court does not find pretext in the fact that the claims arising out of this incident were processed differently than usual. Plaintiff does not dispute that there were claimants demanding reimbursement for the damage she and her crew caused to their property, and she does not argue that the claimants were fabricated by the defendant.

means of preventing overspray damage. Furthermore, a number of foremen/painters have testified that there are effective means for controlling overspray so as to prevent damage, and plaintiff did not employ any such means on the day of the incident (offering the excuse that she and her crew could not have been responsible for overspray due to the fact it was raining that day).[29] Finally, the Court looks again to the fact that Theodoratos, plaintiff's supervisor, was also suspended by Kaderbek as a result of the incident. Because the Court finds that plaintiff has failed to raise a genuine issue of material fact for trial, the City's motion for summary judgment with regard to this claim will also be granted.

## Conclusion

For the forgoing reasons, the Court grants in part and denies in part the City's motion to strike and grants the City's motion for summary judgement. This case is hereby terminated.

**SO ORDERED.**

ENTER: 9/28/01

*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**
**United States Judge**

---

[29] However, the Court judicially notices the public records from the National Oceanic and Atmospheric Administration stating that there were only trace amounts of precipitation between 7:00 and 8:00 a.m., and no precipitation between 9:00 a.m. and 4:00 p.m. (Def.'s Supp. Ex. W.)

# United States District Court
## Northern District of Illinois
### Eastern Division

DOCKETED

SEP 2 8 2001

GINGER DORITY

v.

CITY OF CHICAGO

**JUDGMENT IN A CIVIL CASE**

Case Number: 98 C 4893

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the Court grants in part and denies in part the City's motion to strike [107-1] and grants the City's motion for summary judgment [84-1]. This case is hereby terminated. ENTER MEMORANDUM OPINION AND ORDER

Michael W. Dobbins, Clerk of Court

Date: 9/28/2001

Carole J. Gainer, Deputy Clerk